**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SARAH R. MANCHESTER,**

                                 **Plaintiff,**

         **vs.**                                                   **7:08-CV-078**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

                               **Defendant.**

_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**

## DECISION & ORDER

Sarah R. Manchester ("Plaintiff") brought this action pursuant to 42 U.S.C. § 1383(c)(3) to review a final determination of the Commissioner of Social Security ("the Commissioner") denying Plaintiff's application for Supplemental Security Income benefits ("SSI").

I.      **FACTS**

      **A. Procedural History**

      Plaintiff filed an application for SSI on April 11, 2005 alleging disability since August 2, 2001.  R. at 52.[1]  On August 26, 2005, Plaintiff's application for SSI was denied.  R. at 26.  On October 5, 2005, Plaintiff made a timely request for a hearing before an Administrative Law Judge ("ALJ").  R. at 23.

_____

      [1]"R." Refers to the Administrative Record.

On July 5, 2007, Plaintiff received a video hearing before ALJ Elizabeth Koennecke. R. at 254.  After performing a *de novo* review of Plaintiff's disability claim, ALJ Koennecke issued a decision on September 21, 2007 finding that Plaintiff suffered from severe degenerative disc disease of the lumbar spine, but that this impairment did not preclude her from performing work that existed in significant numbers in the national economy.  R. at 21.  The ALJ concluded that Plaintiff did not suffer from a disability as defined in the Social Security Act ("the Act"), and was not eligible for SSI.  R. at 21-22.

Plaintiff made a timely request to the Appeals Council for review of the ALJ's decision. R. at 10.  On December 19, 2007, the Appeals Council denied Plaintiff's request for review, making the ALJ's ruling the Commissioner's final decision regarding Plaintiff's disability claim. R. at 5-7. Plaintiff now seeks review of the Commissioner's final decision.

**B. Educational and Vocational History**

Plaintiff was born on December 10, 1985. R. at 52.  She graduated from high school in 2004 and attended college from 2004 to Fall 2006.  R. at 259.  Plaintiff has not engaged in and maintained sustained gainful activity and has no past relevant work. R. at 21, 259-63.

**C. Medical History**

**1. Depression and Anxiety**

On June 6, 2001, Plaintiff's parents admitted her to St. Lawrence Psychiatric Center ("SLPC") for mood swings, anger, irritability and suicidal ideations. R. at 127-28.  Plaintiff reported a decreased energy level, crying spells, feelings of hopelessness, little motivation for leisure activities and guilt in relation to her brother's medical condition. R. at 129.  Plaintiff requested admission to the inpatient unit of the Psychiatric Center and was subsequently evaluated by Dr.

Mills, a child psychologist. Id. Plaintiff was estimated to be of average intellectual functioning with a current Global Assessment of Functioning ("GAF") score of 45. R. at 129. Her diagnosis indicated depressive disorder, chaotic and dysfunctional family system, lack of impulse control, discord with peers, physical abuse by her father and suicidal ideation. Id. Plaintiff was discharged on June 13, 2001. R. at 115.

Plaintiff continued outpatient treatment at SLPC. R. 115-19. A June 2002 progress update noted that Plaintiff showed mood stabilization, no suicidal thoughts and improved functioning at school, with peers and within her family system. R. at 116. A progress update from June 2003 indicated that Plaintiff had participated in individual therapy and medication therapy over the preceding year. Id. A seasonal component to Plaintiff's depression was noted, but her moods continued to stabilize and her ability to cope with family and peer stressors improved. Id. An August 2004 discharge summary noted that over the course of Plaintiff's treatment at SLPC, she became less socially anxious and increasingly assertive. R. at 117. At the time of her discharge, Plaintiff denied significant depression or suicidal thoughts and was prescribed Zoloft. R. at 117-18. Plaintiff was discharged from outpatient treatment at SLPC on August 11, 2004 with a diagnosis of anxiety disorder and a GAF score of 70. R. at 115-19.

On March 9, 2006, Plaintiff presented to Dr. Gregory Healey, her primary care physician, complaining of depression. R. at 155. Plaintiff's symptoms included anhedonia, anxious moods, crying spells, decreased ability to concentrate, sadness and feelings of worthlessness. Id. Plaintiff felt that Effexor made her condition worse, but denied suicidal ideation. Id. Dr. Healey opined that Plaintiff was depressed and changed her medication from Effexor to Lexapro. R. at 156.

### 2. Physical Impairments

In early July 2003, Plaintiff was admitted to Fletcher Allen Health Care with back pain that became classic sciatica, "radiating down the posterior lateral aspect of the left leg and settling into the outside of the left foot." R. at 144.  An MRI demonstrated a "sizable paracentral disc herniation at L5-S1 with displacement of the descending S1 nerve root." R. at 145.  Plaintiff demonstrated positive straight leg raising on the left at about 30 degrees with no crossed straight leg raising or straight leg raising on the right. Id.  On July 12, 2003, Dr. Todd Maugans performed an elective L5-S1 microdisectomy on Plaintiff. R. at 131.  The operation was tolerated well without complication and Plaintiff was discharged on July 12, 2003. Id.

On July 28, 2003, Plaintiff underwent a follow-up examination with Dr. Maugans. R. at 143. Plaintiff reported that 95 percent of the pain in her left leg had subsided and that she had no dramatic pain in her lower back. Id.  Plaintiff demonstrated straight leg raising on the left at about 75 degrees. Id. Plaintiff's neurological examination, including sensory, motor and reflex examination were normal. Id.  Dr. Maugans opined that Plaintiff would likely have complete resolution of her radiculopathy symptoms. Id.

On June 8, 2004, Plaintiff attended a second follow-up visit with Dr. Maugans.  R. at 141-42. Dr. Maugans noted that Plaintiff's pain level had decreased post-operatively from 10 out of 10 to 2-3 out of 10 on a visual analog pain scale. R. at 141.  Plaintiff reported increased pain in her lower back after periods of prolonged sitting. Id.  Dr. Maugans noted that Plaintiff complained of decreased flexibility but had no sensory changes or symptoms. Id.  Plaintiff was using over-the-counter ibuprofen, but was not prescribed any chronic medications and was not undergoing any type of

4

therapy. Id.  Plaintiff's lumbar range of motion was diminished secondary to generalized muscular tightness and her lateral motion was normal. Id.  Dr. Maugans found dramatic tightness and pain in Plaintiff's left hamstrings, but found no true straight leg raising. Id.  A detailed sensory and motor examination of Plaintiff's lower extremities was normal with no evidence of active radiculopathy. Id. Dr. Maugans noted that there was no objective evidence of an active L5 radiculopathy, and opined that Plaintiff likely had low-grade inflamation residual in the nerve root. R. at 142.  Plaintiff was prescribed ibuprofen and physical therapy and Dr. Maugans opined that Plaintiff would likely not require further medical attention. Id.

On March 7, 2005, Plaintiff presented to Canton-Potsdam Hospital with neck pain. R. at 202-06.  A cervical spine examination showed no evidence of fracture or dislocation. R. at 189. Plaintiff's vertebral bodies and disc spaces were well maintained and her paraspinal soft tissues appeared normal. Id.  On March 9, 2005, Plaintiff visited Dr. Healey, her primary care physician, for a follow-up examination.  R. at 176.  Plaintiff presented with moderate, constant and sharp pain. Id. Dr. Healey opined that Plaintiff had neck pain with a possible injury to the atlanto-axial ligaments. R. at 177.

On April 26, 2005, Plaintiff presented to Dr. Healey  with complaints of moderate and sharp pain of the thoracic and lumbar spines. R. at 174.  Plaintiff was referred to Dr. Patrick Graupman, a neurologist with the Fletcher Allen Health Care Neurosurgery Division. R. at 198-99.  Plaintiff informed Dr. Graupman that her back pain was around a 4 out of 10 on a visual analog pain scale and worsened with activity. R. at 198.  Plaintiff had a mild positive straight leg raise test at about 45 degrees and a slightly decreased range of motion of the lumbar spine. R. at 199.  An MRI showed a moderate central disk protrusion at the L5-S1 level and minimal to mild S1 nerve root impingement.

5

Id.  Dr. Graupman prescribed physical therapy and ibuprofen and requested an MRI of the cervical thoracic spine and flexion/extension lumbar spine films. Id.  An April 29, 2005 MRI indicated left paracentral disc herniation at the 5-1 level that appeared to compress and displace the descending left S1 nerve root. R. at 188.  The 3-4 and 4-5 levels were within normal limits. Id.

On October 7, 2005, Plaintiff returned to Dr. Healey complaining of continued back pain that was exacerbated by bending. R. at 168.  Neurovascular examination and muscle strength were normal, but Plaintiff's active range of motion was limited, with extension and flexion limited to 15 and 90 degrees respectively. R. at 169.  Plaintiff presented to Dr. Healey with similar complaints on November 4, 2005 and March 7, 2006. R. at 167, 157.

Plaintiff underwent a nuclear medicine bone scan on March 13, 2006. R. at 187.  No signs of any focal areas of abnormal activity were found. Id.  On May 1, 2006, Plaintiff visited Dr. Graupman for a follow-up examination. R. at 196-97.  Dr. Graupman reviewed an April 19, 2006 MRI and found that it showed no significant changes from Plaintiff's April 29, 2005 MRI. R. at 196.  Despite Plaintiff's back pain, Dr. Graupman concluded that she had no "left-sided S1 radicular symptoms" and noted that he was "uneasy...saying that she needs a fusion at 5-1." Id.  Dr. Graupman suggested "bilateral L5-S1 facet blocks with local anesthetic and steroid." Id.

**3. Treating Source Reports**

**i. Dr. Todd Maugans**

On June 8, 2004, Dr. Todd Maugans, Plaintiff's surgeon, completed a report detailing Plaintiff's condition and abilities for the New York State Office of Temporary and Disability Assistance Division of Disability Determinations. R. at 135-40.  Dr. Maugans noted that Plaintiff's

current pain levels were 2 out of 10 and 3 out of 10 in her back and left leg respectively.  R. at 135.

He opined that Plaintiff may suffer from chronic or recurrent pain issues. R. at 136.  While Plaintiff

suffered from tight back muscles, Dr. Maugans reported finding no objective evidence of

neurological deficits. R. at 137.  Dr. Maugans concluded that Plaintiff had no limitations in her

ability to lift, carry, sit, stand, walk, push and/or pull. R. at 139-40.

### ii. Dr. Gregory Healey

On November 4, 2005, Dr. Healey, Plaintiff's primary care physician, completed a Medical

Source Statement of Ability to do Work-Related Activities. R. at 162-66.  Dr. Healey reported that

Plaintiff was limited to lifting or carrying 10 pounds occasionally with the inability to lift or carry

any weight frequently. R. At 162.  He noted that Plaintiff was able to stand and/or walk for at least

two hours in an eight hour work day. Id.  Dr. Healey found that Plaintiff had to periodically alternate

sitting and standing to relieve pain or discomfort and that her ability to push and/or pull was limited

in both her upper and lower extremities. R. at 163.  Plaintiff was able to occasionally balance, kneel

and reach but could never climb, crouch, crawl or stoop. R. at 163-64.  Dr. Healey reported that

Plaintiff was unable to work around vibrations and hazards including machinery and heights. R. at

165.

On June 29, 2007, Dr. Healey, with the assistance of Physician's Assistant Michelle Kent,

performed a second Medical Source Statement of Ability to do Work-Related Activities.  R. at 242-

46.  The June 2007 report was identical to the November 2005 in all respects other than Plaintiff's

ability to sit. R. at 243.  While the November 2005 report indicated that Plaintiff had to periodically

alternate sitting and standing, the June 2007 report noted that Plaintiff could sit for less than six

hours in an eight hour work day. R. at 243.

### 4. Consultative Examination Reports

#### i. Dr. James Naughten

On June 14, 2005, Plaintiff attended a consultative orthopedic examination with Dr. James Naughten. R. at 207-09.  Plaintiff complained of sharp pain radiating to her left leg and intermittent headaches. R. at 207.  Plaintiff's daily activities included cooking with parents, shopping and socializing with friends. R. at 208.  Dr. Naughten noted that Plaintiff had full flexion and extension of the cervical, thoracic and lumbar spines, full rotary movement bilaterally and no trigger points. Id. No sensory abnormalities of the upper or lower extremities were found. R. at 208-09.  Plaintiff's straight leg raising test was negative bilaterally. R. at 209.  An X-Ray of the lumbar sacral spine revealed narrowed disc space at L5-S1. R. at 210.  Plaintiff was diagnosed as having lower back pain secondary to a herniated disc. Id.  Dr. Naughten opined that Plaintiff's headaches could possibly interfere with her ability to sustain prolonged mental activity, but were mild at the time of examination. Id.  He reported that Plaintiff had no restrictions on sitting, standing, walking, pushing, pulling, reaching or handling objects and had mild restrictions on lifting and carrying. Id.

#### ii. Dr. Jeanne A. Shapiro

On June 14, 2005, Plaintiff attended a consultative psychiatric evaluation with Psychologist Jeanne A. Shapiro. R. at 211-15.  Plaintiff did not report any significant manic or anxiety related symptoms. R. at 212.   While Plaintiff admitted to having "good days and bad days," she denied any suicidal ideation, plan or intent. Id.  She complained of memory and concentration problems. Id.  Dr. Shapiro found Plaintiff's attention, concentration, recent and remote memory skills to be intact. R. at

213.  Plaintiff's intellectual functioning was estimated to be in the low-average to borderline range.
Id.  Dr. Shapiro found that Plaintiff was capable of understanding and following simple instructions
and directions and performing simple and complex tasks with supervision and independently. R. at
214.  Plaintiff was also found to be capable of learning new tasks, making appropriate decisions and
maintaining attention and concentration. Id.  Furthermore, Plaintiff was found to be capable of
dealing with stress and appropriately relating to, and interacting with, others. Id.  Dr. Shapiro
concluded that Plaintiff suffered from no significant psychiatric problems and that her symptoms
were mild and transient in nature. Id.  She diagnosed Plaintiff as suffering from mild Seasonal
Affective Disorder and Borderline Intellectual Functioning and suggested that Plaintiff continue
counseling as currently provided. Id.

### 5. Non-Examining Physician Report

On August 26, 2005, Dr. Teena Guenther, a non-examining State Agency medical examiner
reviewed Plaintiff's medical records and completed a Mental Residual Functional Capacity
Assessment and Psychiatric Review Technique form. R. at 216-33.  Dr. Guenther opined in the
Mental RFC Assessment that Plaintiff was moderately limited in her "ability to complete a normal
workday and workweek without interruptions from psychologically based symptoms and to perform
at a consistent pace without an unreasonable number and length of rest periods." R. at 217.  Overall,
Plaintiff was found to experience some psychiatric symptoms while remaining able to "follow
directions, maintain pace for tasks, relate adequately with others and cope with minor changes." R. at
218.  Dr. Guenther reported in a Psychiatric Review Technique form that Plaintiff had moderate
difficulty in maintaining concentration, persistence or pace and mild difficulty in maintaining social
functioning. R. at 230.

9

In an undated report, another non-examining State Agency medical examiner reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment. R. at 234-39.  The medical examiner concluded that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently and was capable of sitting, standing and/or walking for about six hours in an eight hour work day. R. at 235.  Plaintiff was found to be unlimited in her ability to push and/or pull. Id.  She was found to have the capacity to occasionally stoop. R. at 236.  No environmental limitations were reported. R. at 237.

### 6. Plaintiff's Testimony

On July 5, 2007, Plaintiff received a video hearing before ALJ Elizabeth Koennecke. R. at 254.  Plaintiff testified that she had attended SUNY Canton but was forced to leave school in 2006 because of her inability to pay tuition and because carrying her books and sitting for prolonged periods of time caused her back pain. R. at 259.  She indicated that she planned to return to college "depending on [her] job status." R. at 266.  She testified that she was currently employed as a nanny for a family with three young children and that the father of the family came home at least three times per day to assist her.  R. at 259-60.  Plaintiff testified that she left her previous jobs at the SUNY Canton cafeteria, Burger King and McDonalds because of back pain. R. at 260-63.

Plaintiff complained of left leg numbing, tingling and pinching and lower back pain that shot up into her neck. R. at 263-65.  She testified that she experienced muscle spasms three to four times per week and that her range of motion is occasionally, but not usually, affected. R. at 263-64.  Her current treatment includes over-the-counter pain medication and heat packs a few times a week. R. at 267.  She indicated that she intended to have another back surgery at an undetermined point in the

future. R. at 264.  Plaintiff also complained of anxiety attacks, with the most recent having occurred

in May of 2006. R. at 266.  Plaintiff opined that she was capable of lifting approximately 10 to 15

pounds. R. at 269.  She testified that she could sit, stand and/or walk for 20 to 30 minutes. R. at 269.


## II.    BURDEN OF PROOF

The claimant bears the initial burden of showing, by means of medical evidence, that she is

disabled as defined in the Social Security Act. Matthews v. Eldridge, 424 U.S. 319, 336

(1976)(citation omitted).  The Act defines "disability" as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than [twelve] months." 42 U.S.C.A § 423(d)(1)(A).  In determining whether an individual is

disabled, the following analysis is applied by the ALJ:

> First, the Commissioner considers whether the claimant is currently engaged in
> substantial gainful activity.  Where the claimant is not, the Commissioner next
> considers whether the claimant has a 'severe impairment' that significantly limits her
> physical or mental ability to do basic work activities.  If the claimant suffers such an
> impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant has a
> listed impairment, the Commissioner will consider the claimant disabled without
> considering vocational factors such as age, education, and work experience; the
> Commissioner presumes that a claimant who is afflicted with a listed impairment is
> unable to perform substantial gainful activity.  Assuming the claimant does not have
> a listed impairment, the fourth inquiry is whether, despite the claimant's severe
> impairment, she has the residual functional capacity to perform her past work.
> Finally, if the claimant is unable to perform her past work, the burden then shifts to
> the Commissioner to determine whether there is other work which the claimant could
> perform.

Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999) (citing Balsamo v. Chater, 142 F.3d 75, 79-80 (2d

Cir. 1998).  Once a disability is established, the burden shifts to the Commissioner to show "the

existence of alternative substantial gainful work which exists in the national economy and which the

claimant could perform" considering her physical capacity, age, education and training.  Parker v.

Harris, 626 F.2d 225, 231 (2d Cir. 1980) (citations omitted).


III.    STANDARD OF REVIEW

        In reviewing the Commissioner's final decision, a court's inquiry is limited to two

determinations: (1) whether the Commissioner applied the correct legal standard; and (2) whether the

Commissioner's "conclusions were supported by substantial evidence in the administrative record."

Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009) (citing 42 U.S.C. § 405(g)).

"Substantial evidence" is not a "mere scintilla," but rather is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Lamay, 562 at 507 (citing Richardson v.

Perales, 402 U.S. 389, 401 (1971).


IV.    ALJ FINDINGS

        In her September 21, 2007 decision, ALJ Koennecke found that while Plaintiff was currently

employed, the brief duration of her employment left open the possibility that it may be an

unsuccessful work attempt, and she was therefore not considered to be engaged in substantial gainful

activity. R. at 17.  The ALJ next found that Plaintiff's degenerative disc disease constituted a

"severe" impairment, but did not meet or medically equal one of the listed impairments in Appendix

1, Subpart P, Regulations No. 4. R. at 17-18.

12

In determining whether Plaintiff was able to perform work existing in the national economy in significant numbers, ALJ Koennecke first had to assess Plaintiff's residual functional capacity ("RFC").[2]  The ALJ found that over the course of an eight our work day with normal breaks, Plaintiff had the capacity to sit, stand and/or walk for six hours. R. at 18.  She also found that Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently. Id.

In reaching her conclusion regarding Plaintiff's exertional limitations, the ALJ considered both the objective evidence of record and the opinions of a non-examining State Agency medical examiner, consultative examiner Dr. Naughten and treating physicians Dr.'s Healey and Graupman. R. at 18-21.  ALJ Koennecke declined to afford considerable weight to the opinion of Plaintiff's primary care physician, Dr. Healey, because she found that his November 2006 opinion was inconsistent with the opinion's of Dr.'s Graupman and Naughten and the non-examining State Agency medical examiner. R. at 18-19.  The ALJ also found Dr. Healey's opinion to be contradicted by objective evidence, noting that the most significant clinical finding made was a muscle spasm in the lumbar paraspinal muscles. Id.

The ALJ determined that Plaintiff did not suffer from any non-exertional impairments. R. at 17-18.  She found that the August 2005 report of Dr. Teena Guenther, a non-examining State Agency medical examiner, opining that Plaintiff suffered from mild difficulties maintaining social functioning and moderate difficulties maintaining concentration, persistence and pace was not supported by the record. R. at 17.  Instead, the ALJ gave considerable weight to the June 2005

---

[2]Residual Functional Capacity ("RFC"): The most an individual can still do despite their physical and/or mental limitations that affect what they can do in a work setting. 20 C.F.R. §§ 404.1545 and 416.945.

opinion of consultative examiner Dr. Shapiro, concluding that Plaintiff had no difficulties maintaining social functioning, concentration, persistence or pace and had no restriction of activities of daily living. R. at 17-18. The ALJ added that the record contained no objective evidence of any difficulties with concentration, persistence or pace. R. at 18.

The ALJ also considered Plaintiff's testimony pursuant to 20 C.F.R. § 416.929. R. at 19-21. ALJ Koennecke determined that Plaintiff's allegations regarding her symptoms and limitations were not entirely credible in light of the other evidence in the record. Id. The ALJ cited Plaintiff's busy work and school schedule in October 2004 and her enrollment in college until the fall of 2006 as evidence that her condition is not as severe as alleged. R. at 20. The ALJ opined that Plaintiff's current position as a nanny would require at least light exertion. Id. Furthermore, the fact that Plaintiff only takes over-the-counter medication for pain management was cited by the ALJ as evidence that her allegations of severe pain are exaggerated. Id.

Because Plaintiff has no past relevant work, the ALJ next considered Plaintiff's age, education, RFC and past work experience in holding that Plaintiff was capable of performing jobs that existed in significant numbers in the national economy. R. at 21. Plaintiff was found to have a RFC for the full range of "light work." Id. Accordingly, Plaintiff was deemed "not disabled" under Medical-Vocational Rule 202.20, and, therefore, was not eligible for SSI under sections 1602 and 1614(a)(3)(A) of the Act. R. at 21-22.

V.      DISCUSSION

        A. Extent & Impact of Mental Limitations

14

Plaintiff first contends that in assessing her mental limitations, the ALJ erred by not considering all of Plaintiff's psychiatric symptoms. Dkt. No. 9, at 9.  An ALJ must consider all medical evidence of record when making a disability determination.  20 C.F.R. § 404.1520(a)(3). An ALJ need not, however, specifically discuss the weight given to each piece of evidence considered if the rationale for her opinion can be gleaned from other portions of her decision or from clearly credible evidence.  Monguer v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) (citing Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982)).

ALJ Koennecke found that Plaintiff did not suffer from any non-exertional impairments.  R. at 17-18.  Plaintiff complains that the ALJ failed to consider the following symptoms: mood swings with anger and irritability; self-isolation; poor self-perception; suicidal ideation; diminished concentration and headaches; diminished energy and motivation; depression with crying spells; difficulty sleeping and cognitive deficit.  Dkt. No. 9, at 9-10.  These alleged symptoms were largely irrelevant at the time of the ALJ's decision, however, because they were either unsubstantiated by objective evidence or had been resolved through therapy and medication.  In fact, Plaintiff testified at her video hearing that she no longer suffered from headaches and that her only other psychological complaint was infrequent anxiety attacks that Dr. Healey told her were "normal."  R. at 265-66.

Plaintiff also argues that the ALJ summarily concluded, without explanation, that she had no restrictions of activities of daily living or difficulties maintaining social functioning, concentration, persistence or pace.  Dkt. No. 9, at 10.  The ALJ made clear that her decision regarding Plaintiff's lack of non-exertional limitations was based on the evidence in the record and the findings of consultative examiner Dr. Shapiro. R. at 17-18.  The ALJ explained that she gave greater weight to the opinion of Dr. Shapiro than that of a non-examining State Agency medical examiner because Dr.

15

Shapiro's findings were supported by the evidence of record, such as Plaintiff's ability to act as a nanny for three young children, and noted that there was no objective evidence showing any difficulties with concentration, persistence or pace. R. at 18.  Further supporting the ALJ's holding is Plaintiff's ability to perform academically at the collegiate level. R. at 259-66.

Accordingly, the ALJ adequately considered all relevant medical evidence, and her determination that Plaintiff was not limited by non-exertional impairments is supported by substantial evidence.

### B.  Listing 1.04(A)

Plaintiff next contends that the ALJ erred in not finding that Plaintiff's injury met or equaled Listing 1.04(A).[3] Dkt. No. 9, at 11.  At step three of the disability analysis, the ALJ determines whether a claimant's impairment meets or equals "one or a number of listed impairments that the [Commissioner] acknowledges as so severe as to preclude substantial gainful activity." Bowen v. Yuckert, 482 U.S. 137, 141 (1987).  While the ALJ should provide a detailed explanation for her findings at this step, the absence of an express rationale does not preclude affirmation of the ALJ's opinion where portions of the ALJ's decision and the evidence before her indicate that her conclusion is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 468 (2d Cir. 1982).

---

[3]20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04(A) requires a spinal disorder (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root or the spinal cord with: A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising (sitting and supine).

ALJ Koennecke acknowledged that Plaintiff had a "severe" back disorder, but found that her impairment did not meet Listing 1.04(A). R. at 17-18.  Although ALJ Koennecke failed to provide thorough reasoning for her finding at this step of the disability analysis, other portions of the ALJ's opinion, combined with the evidence of record, indicate that her opinion regarding Plaintiff's impairment was supported by substantial evidence.

An April 2005 MRI indicated left paracentral disc herniation at the 5-1 level that appeared to compress and displace the descending left S1 nerve root, satisfying the first prong of the Listing 1.04(A) test. R. at 188.  This, however, was the only prong of the test that was satisfied. While Dr. Graupman reported a mild positive straight leg raise test at about 45 degrees on May 24, 2005, Dr. Naughten found on June 14, 2005 that Plaintiff had a negative straight leg raise test bilaterally. R. at 199, 209.  Dr. Naughten also reported that Plaintiff had full flexion and extension of the cervical, thoracic and lumbar spines, full rotary movement bilaterally and no trigger points. R. at 208.  He further found that Plaintiff had no sensory abnormalities of the upper or lower extremities. R. at 208-09.  On June 8, 2004, Dr. Maugans reported that while Plaintiff suffered from tight back muscles, there was no objective evidence indicating neurological deficits. R. at 137. Dr. Graupman's May 2005 report noted that Plaintiff had full strength throughout. R. at 199.

Accordingly, the ALJ properly determined that Plaintiff's impairments did not satisfy the conjunctive test required to meet or equal Listing 1.04(A).

**C. Treating Physician**

Plaintiff next contends that the ALJ erred in failing to afford controlling weight to the

17

opinion of her primary care physician, Dr. Healey. Dkt. No. 9, at 15.  A treating physician's opinion receives controlling weight if it is well supported by medically acceptable clinical and laboratory findings and is not inconsistent with the other substantial evidence of record. 20 C.F.R. §§ 404.1527(d) and 416.928(d).  When a treating physician's opinion is not afforded controlling weight, the following factors are considered in determining the weight given: (i) length of the treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship; (iii) medical evidence supporting opinion; (iv) degree to which the opinion is consistent with the record as a whole; (v) specialization of physician; and (vi) other relevant factors. Id.  Where these factors are applied, specific reasons explaining the weight given to the treating physician's opinion are required. Id.

Dr. Healey found that Plaintiff was limited to lifting or carrying 10 pounds occasionally with the inability to lift or carry any weight frequently. R. At 162.  He noted that Plaintiff was able to stand and/or walk for at least two hours in an eight hour work day, but had to periodically alternate sitting and standing to relieve pain or discomfort. Id.  He opined that her ability to push and/or pull was limited in both her upper and lower extremities while she was occasionally able to balance, kneel and reach, but never climb, crouch, crawl or stoop. R. at 163.  ALJ Koennecke declined to afford controlling weight to the opinion of Dr. Healey, finding that his conclusions were contradicted by both objective evidence and the opinions of Drs. Graupman and Naughten and a non-examining State Agency medical examiner. R. at 18-19.

Dr. Graupman examined Plaintiff in April 2005 and May 2006.  R. at 196-199.  An MRI from Plaintiff's first visit with Dr. Graupman revealed minimal to mild S1 nerve root impingement. R. at 199.  During Plaintiff's May 2006 follow-up visit, Dr. Graupman compared Plaintiff's original

18

MRI to an April 19, 2006 MRI and found no significant changes. R. at 196.  While Dr. Graupman

did not directly assess Plaintiff's ability to perform work-related activities, he concluded, after

comparing the two MRI's, that Plaintiff had no "left-sided S1 radicular symptoms" and that he was

"uneasy...saying that she needs a fusion at 5-1." R. at 196.

Dr. Naughten performed a physical examination of Plaintiff and ordered an X-Ray of her

lumbar sacral spine. R. at 210.  The examination revealed full flexion and extension of the cervical,

thoracic and lumbar spines and no sensory abnormalities of the upper or lower extremities. R. at 208-

09.  The X-Ray of Plaintiff's lumbar sacral spine revealed narrowed disc space at L5-S1. R. at 210.

Dr. Naughten concluded that Plaintiff had no restrictions on sitting, standing, walking, pushing,

pulling, reaching or handling objects and had mild restrictions on lifting and carrying. Id.  The ALJ

also afforded some weight to the undated opinion of a non-examining State Agency medical

examiner who, after reviewing Plaintiff's medical record, concluded that she could lift or carry 20

pounds occasionally, 10 pounds frequently and sit, stand and/or walk for six hours in an eight hour

work day. R. at 19.  The ALJ's conclusion is further bolstered by Dr. Maugan's June 2004 report

stating that Plaintiff had no limitations in her ability to lift, carry, sit, stand, walk, push and/or pull.

R. at 139-40.

ALJ Koennecke further noted that Dr. Healey's opinion was unsupported by his own

objective findings. R. at 19.  While Plaintiff presented to Dr. Healey with complaints of back pain on

multiple dates between 2005 and 2007, the most severe objective laboratory finding made by Dr.

Healey during this period was muscle spasms in the lumbar paraspinal muscles. R. at 167-85.

Accordingly, the ALJ adequately articulated her reasons for declining to afford controlling

weight to the opinion of Dr. Healey and properly found that his opinion was inconsistent with the substantial evidence of record.

**D. Residual Functional Capacity ("RFC")**

Plaintiff next argues that the ALJ erred in her assessment of Plaintiff's Residual Functional Capacity ("RFC"). Dkt. No. 9, at 13.  A claimant's RFC is the most that an individual can do in a work setting despite their physical and/or mental limitations. 20 C.F.R. §§ 404.1545 and 416.945. The determination of a claimant's RFC is based on all relevant medical evidence, and is reserved solely for the ALJ. 20 C.F.R. §§ 416.946(c) and 404.1545.

ALJ Koennecke found that Plaintiff could lift or carry 20 pounds occasionally, 10 pounds frequently and stand, walk and/or sit for six hours in an eight hour work day. R. at 18.  She also found that Plaintiff was not restricted by non-exertional limitations. R. at 17-18.

For the reasons articulated above in Sections V(C) and V(A), respectively, the Court concludes that the ALJ reasonably relied on all relevant medical evidence in reaching her well-supported assessment of Plaintiff's RFC.

**E. Credibility of Plaintiff's Subjective Allegations**

Plaintiff next contends that the ALJ erred in failing to afford full credibility to her subjective testimony. Dkt. No. 9, at 19.  A claimant alleging disability resulting from subjective pain "need not adduce direct medical evidence confirming the extent of the pain," but medical evidence or laboratory findings showing the existence of a medical impairment that could reasonably be expected to produce such pain are required.  Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999) (internal citations omitted).  Where a claimant alleges symptoms of a greater severity of impairment than can

be shown by objective medical evidence, other evidence will be considered, including claimant's daily activities and the medications, methods and treatments used to alleviate her symptoms. 20 C.F.R. § 416.929(c)(3).   It is the function of the Commissioner, not the reviewing court, to "resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Caroll v. Sec'y of Health and Human Serv., 705 F.2d 638, 642 (2d Cir. 1983).  Where the Commissioner's appraisal of credibility is supported by substantial evidence, the reviewing court "must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y of Health and Human Serv., 728 F.2d 588, 591 (2d Cir. 1984) (internal citations omitted).

ALJ Koennecke found that Plaintiff's allegations regarding the intensity, frequency and limiting nature of her impairments were not fully credible because they were contradicted by the evidence of record and her own testimony. R. at 20. She found that the Plaintiff's current employment as a nanny suggested that her pain level was not as severe as alleged. Id.  The ALJ reasoned that the lifting required in caring for a one year old and a three year old would, at minimum, fall under the lifting limits of the light exertion category. Id.  The ALJ further held that the fact that Plaintiff only takes over-the-counter medication for pain management indicates a lesser degree of pain than alleged. Id.

The ALJ also cited Plaintiff's busy work and school schedule in October 2004 as evidence that her pain could not have been debilitating from 2001 forward as alleged. Id.  Furthermore, Plaintiff was a full-time student at SUNY Canton until the fall of 2006 when she left school because of her inability to pay tuition and because carrying her books and sitting for prolonged periods of time caused her back pain. R. at 259.  While Plaintiff argues in her brief that back pain was the determinative factor behind leaving school (Dkt. No, 9, at 20), she testified in her video hearing that

she intended to return to college "depending on [her] job status." R. at 266.  This testimony suggests that the Plaintiff's decision to leave SUNY Canton was primarily financial, not pain-related.

Accordingly,  the full veracity of Plaintiff's subjective assertions are drawn into question by substantial evidence, and, therefore, the ALJ's decision to discount her credibility must be upheld.

**F. Plaintiff's Ability to Perform "Other Work"**

Plaintiff finally contends that the ALJ erred in relying on the Medical-Vocational Guidelines ("the Grids") in concluding that there was significant work in the national economy that Plaintiff could perform. Dkt. No. 9, at 21.  At step five of the sequential analysis, the burden shifts to the Commissioner to prove "the existence of alternative substantial gainful work which exists in the national economy and which the claimant could perform" considering her physical capacity, age, education and training.  Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980) (citations omitted); see also 20 C.F.R. § 416.920(g).  Where a claimant has only exertional impairments, the Commissioner's burden is satisfied by the application of the Medical-Vocational Guidelines ("the Grids").  Bapp v. Bowen, 803 F.2d 601, 604 (2d Cir. 1986).  Where a claimant has both exertional and non-exertional impairments, however, application of the Grids is improper if the claimant's non-exertional impairments "significantly limit the range of work permitted by his exertional limitations." Id. at 605 (quotations omitted).

ALJ Koennecke determined that based on Plaintiff's age, education, work experience and RFC for the full range of light work, she was "not disabled" pursuant to Medical-Vocational Rule 202.20. R. at 21.  Plaintiff argues that the ALJ should have considered the exertional and non-exertional limitations articulated by Dr. Healey, which would render application of the Grids inappropriate. Dkt. No. 9, at 21-23.  As articulated above in Sections V(A), V(C) and V(D),

however, ALJ Koennecke properly found that Plaintiff's RFC allowed her to perform all activities in the light work category, that she was not limited by non-exertional impairments and that Dr. Healey's conclusions regarding Plaintiff's exertional and non-exertional limitations were not supported by substantial evidence.

Accordingly, the ALJ properly applied Medical-Vocational Rule 202.20 in determining that Plaintiff was not disabled.

## VI.   CONCLUSION

Where the findings of the Commissioner are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); <u>Perez</u>, 77 F.3d at 46.  In the present case, the ALJ's decision that Plaintiff did not suffer from a disability as defined in the Act, and therefore was not eligible for SSI, was supported by substantial evidence.  Accordingly, the decision of ALJ Koennecke is affirmed.

IT IS SO ORDERED.

Dated: August 19, 2009

Thomas J. McAvoy
Senior, U.S. District Judge

23